The following constitutes
the order of the court. Signed December 29, 2011

_____
William J. Lafferty, III
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re Velma Levingston,            )
                                   )   Case No. 10-48479
                                   )   Chapter 13
            Debtor.                )
_____)

MEMORANDUM OF DECISION SUSTAINING OBJECTION TO CONFIRMATION
AND ORDER DISMISSING CASE WITH 14 DAY STAY

This matter came on for a continued hearing on November 10, 2011 regarding Creditor Bayview Loan Servicing, LLC's ("Bayview") objection to confirmation of debtor Velma Levingston's (the "Debtor") Third Amended Chapter 13 Plan. Appearances were as noted on the record. Bayview objects to confirmation based Bayview's assertion that the Debtor is in violation of the § 109(e) debt limits for Chapter 13 eligibility. For the reasons that follow, the Court will sustain Bayview's objection to confirmation of the Debtor's Third Amended Chapter 13 Plan and dismiss this case,

1

effective in fourteen (14) days, unless the Debtor moves to convert her case to one under Chapter 7 or Chapter 11.

### Statement of Facts and Positions of the Parties

The Debtor filed her petition under Chapter 13 on July 27, 2010. The Debtor's Amended Schedule A, filed September 15, 2011, indicates that she owns four parcels of real property. The Debtor owns her residence located at 1726 Benedict Dr., San Leandro, CA (the "Residence"). The Debtor also owns three parcels of rental property: (1) 6904 Geyer Springs Rd., Little Rock, AR (the "Geyer Springs Property"); (2) 215 East 22nd St., Little Rock, AR (the "22nd Street Property"); and (3) 1400 South Battery St., Bldgs. A & B, Little Rock, AR (the "Battery Street Properties")(collectively, the "Rental Properties").

According to Amended Schedule D, filed September 15, 2011, the Debtor's Residence is worth $500,000 and is encumbered by two deeds of trust—a BAC Home Loans Servicing, LP ("BAC Home Loans") first position lien in the amount of $739,459.95 and a BAC Home Loans second position lien in the amount of $142,173.74. The Debtor concedes that the first position lien on her Residence is a recourse loan.

The Debtor values the Geyser Springs Property at $160,000 and indicates that it is encumbered by a first position lien held by Bayview Loan Servicing in the amount of $178,026.64 and a second position lien held by Jerrial W. Rice in the amount of $33,000. The 22nd Street Property is valued at $50,000, and it is encumbered by a first position lien held by Iberia Bank in the amount of $104,785 and a property tax lien in the amount of $5,450.57. Last,

2

Amended Schedule D values the Battery Street Properties at $200,000 and lists two liens secured by the property—a first priority lien held by Wells Fargo Home Mortgage in the amount of $96,658.05 and second position lien held by Wells Fargo Home Mortgage in the amount of $110,549.58.

The Debtor lists noncontingent, liquidated, secured debt of $1,444,457.53 in Amended Schedule D.[1] After subtracting the "unsecured" portions of the liens on the Residence and the Rental Properties from the secured debt calculation, the Debtor asserts that she has secured claims of only $958,952. In Schedules E and F, the Debtor lists a total of $106,437.20 in noncontingent, liquidated, unsecured debt. After adding the "unsecured" portions of the liens on the Rental Properties to the unsecured debt, the Debtor claims that she owes $352,473.13 in total unsecured debt. In calculating the amount of secured and unsecured debt at the time of filing, the Debtor does not include the undersecured portion of the first position lien on her Residence in the secured or unsecured debt categories. This omission leaves $239,459.95 unaccounted for (the "Unaccounted For Amount").

Bayview argues that the Unaccounted For Amount must either be added to the Debtor's total secured debt or unsecured debt. Bayview asserts that, if the Unaccounted For Amount is added to either category, the Debtor will exceed the secured debt limit or

---

[1] The Debtor's Memorandum and Points of Authorities in Support of Confirmation of Chapter 13 Plan asserts that her schedules, as amended, reflect secured debt of $958,952. This is not the case. The Debtor's Amended Schedule D reflects the same amount of secured debt reflected in her original Schedule D. Nonetheless, based on the brief, the Debtor's position regarding the Section 109(e) debt calculation is clear to the Court.

3

Case: 10-48479    Doc# 81    Filed: 12/29/11    Entered: 12/29/11 16:14:44    Page 3 of 10

the unsecured debt limit, respectively. The Debtor does not dispute this contention in the abstract. Thus, the only question before the Court is whether the Debtor must count the undersecured portion of the first position lien on the Residence toward the § 109(e) debt limits.

## Discussion

Section 109(e) of the Bankruptcy Code provides, in pertinent part, that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debt of less than $360,475 and non-contingent, liquidated, secured debts, of less than $1,081,400 . . . may be a debtor under this title."[2] 11 U.S.C. § 109(e). Section 506(a) is the starting point for defining what constitutes secured and unsecured debt for purposes of § 109(e). Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 978 (9th Cir. 2001). Thus, the general rule is that the unsecured portion of "secured debt" is treated as "unsecured debt" for purposes of § 109(e). Id.

Despite this general rule, Courts have excluded the undersecured portion of "secured" debt from the total unsecured debt for § 109(e) purposes in some circumstances. Where § 1322(b)(2) prevents bifurcation of the debt, some courts have found that the entire amount of an undersecured debt must be treated as "secured" for § 109(e) purposes. See e.g. In re Smith, 419 B.R. 826, 832 (Bankr. C.D. Cal. 2009) ("Where a debtor is partially

---

[2] The amounts of the § 109(e) debt limits are subject to periodic adjustment as authorized by § 104 of the Bankruptcy Code. The amounts indicated are the amounts in effect as of the date of the petition date in this case.

4

secured on a debtor's primary residence, that debt will be counted as secured debt for § 109(e) purposes"). And where an undersecured claim is non-recourse debt and therefore not collectible under state law, at least one court has held that the undersecured portion of a non-recourse loan should be omitted from a debtor's total unsecured debt limit for § 109(e) purposes. See In re Tolentino, 2010 WL 1462772, at *2 (Bankr. N.D. Cal. 2010).

Although the exceptions described above remove the undersecured portion of a "secured" debt from the § 109(e) unsecured debt calculation, these exceptions do not remove the undersecured portion of the debt from the § 109(e) debt calculation. Instead, under these exceptions, such undersecured debts are treated as secured in their entirety. Nevertheless, in this case, the Debtor urges the Court to go one step further; i.e., to conclude that the undersecured portion of the first position lien on her Residence should not count toward the § 109(e) debt limits at all. The Debtor presents three arguments in support of this proposition.

1.) *Is the undersecured portion of the first position lien on the Residence a "debt"?*

First, the Debtor argues that the undersecured portion of the first position lien on her residence is not a "debt" as defined by the Bankruptcy Code, because the lender holds only a possible deficiency, which is not a "debt" as of the petition date. In California, a lender holding a recourse loan on real property must first waive its right to non-judicial foreclosure and follow the procedures for obtaining a deficiency judgment through judicial

5

foreclosure to be entitled to enforce a deficiency. The Debtor therefore argues that under California law the undersecured portion of a recourse loan only becomes a "debt" if a judicial sale of the property results in a deficiency.[3]

The Court disagrees with the Debtor's analysis of the definition of "debt" and finds the reasoning of <u>In re Silva</u>, 2011 WL 5593040, at 2* (Bankr. N.D. Cal. 2011), which was decided by another court in this District, persuasive. "The term debt means liability on a claim." 11 U.S.C. § 101(12). The Code defines a "claim" liberally as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A). When a debtor signs a note, the lender obtains a "right to payment" on the note, and a debt is created. <u>In re Silva</u>, 2011 WL 5593040, at *2. Whether state law may preclude a lender from enforcing the entire amount of a debt is different from the question of whether a "debt" exists. <u>Id</u>. There is no question that, when the Debtor executed and delivered the note secured by the first position lien on her Residence, a debt was created for the full amount due under the note. The Court therefore rejects this argument.

2.) *Is the undersecured portion of the first position lien on the Residence a contingent debt?*

In the alternative, the Debtor argues that the undersecured

---

[3] The Court notes that the Debtor's argument is premised on the fact that the lender is the foreclosing entity. In California, if the holder of a recourse loan is not the foreclosing lender, then § 580d of the California Code of Civil Procedure does not preclude the lender from pursuing a debtor personally for any deficiency.

6

portion of the first position lien on her Residence is a contingent debt, and therefore should not be included in the § 109(e) debt calculation. Similar to the Debtor's argument regarding the definition of a "debt" under the Code, the Debtor asserts that the debt is contingent due to the operation of California anti-deficiency statutes. In California, § 580d of the California Code of Civil Procedure precludes a lender from collecting a deficiency on a recourse debt when the lender avails itself of its right to foreclosure non-judicially on the property.[4] Based on the foregoing, the Debtor asserts that, in California, when a debtor signs a note secured by real property, only a "possible deficiency" exists and the debt is therefore contingent.

Once again, this Court finds the reasoning of the <u>Silva</u> Court, which analyzed this same issue, persuasive. "A debt is contingent if it does not become an obligation until the occurrence of a future event which will trigger the liability of the debtor to the creditor." <u>In re Silva</u>, 2011 WL 5593040, at *3 (citing <u>In re Mazzeo</u>, 131 f.3d 295, 303 (2d Cir. 1997)). The judicial foreclosure process may enable the creditor to enforce a deficiency, but it does not create the liability. <u>See</u> <u>id</u>. The liability is created when the debtor signs the note secured by

---

[4] Section 580d of the Code of Civil Procedure provides, in pertinent part, that:
> No judgement shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under the power of sale contained in the mortgage or deed of trust. Cal. Civ. Proc. Code § 580d.

7

a deed of trust. Id. The fact that California's anti-deficiency statutes require a lender to follow certain statutory procedures to enforce a deficiency does not make a debtor's liability contingent. Id. Thus, the undersecured portion of the first position lien on the Debtor's Residence is not contingent.

3.) *Is the undersecured portion of the first position lien on the Residence an unliquidated debt?*

Last, the Debtor argues that the undersecured portion of the first position lien on her Residence should not be included in the § 109(e) calculation because the amount is unliquidated. A debt is liquidated if it is "readily determinable". <u>Slack v. Wilshire Ins. Co. (In re Slack)</u>, 187 F.3d 1070, 1074 (9th Cir. 1999). Whether a debt is "readily determinable" depends on whether the amount is easily calculable. Id. The Debtor asserts that the debt is not easily calculable because an extensive evidentiary hearing will be needed to determine the amount of any deficiency.

This Court disagrees with the Debtor's assertion that an evidentiary hearing will be needed to determine the amount of the unsecured deficiency. In the first place, as demonstrated above, the relevant question under these facts is what is the total amount of the debt, a matter not truly subject to any dispute. Moreover, even were it necessary separately to establish for bankruptcy valuation purposes under section 109(e) the undersureced portion of the debt owed to the first position lien creditor against the Residence, the Court disagrees that this amount could not be determined absent a lengthy evidentiary proceeding before this Court or a different court. Section 506(a) allows a bankruptcy

8

court to determine, for bankruptcy valuation purposes, the amount of a secured debt, and by implication, the amount of any unsecured deficiency. The determination of the amount of an unsecured deficiency claim is not difficult and is a calculation performed by bankruptcy courts on a daily basis. The amount of an unsecured deficiency claim can be determined simply by looking at the Debtor's schedules and performing simple math (i.e., in this case, by subtracting the value the collateral from the total amount of the first position lien). In this case, the unsecured deficiency is $239,459.95. The amount of the undersecured debt is "readily determinable", and therefore, a liquidated debt.

## CONCLUSION

The undersecured portion of the first position lien on the Residence is a noncontingent, liquidated, debt, and, therefore, must be included in the § 109(e) debt calculation. As previously conceded by the Debtor, if the Unaccounted for Amount is included in the § 109(e) debt calculation, either in the "secured" or "unsecured" column, the Debtor would exceed the debt limits for Chapter 13 eligibility.

Based on the forgoing, the Court denies confirmation of the Debtor's Chapter 13 plan. The Debtor is ineligible for relief under Chapter 13 of the Bankruptcy Code. The Debtor has fourteen (14) days from the entry of this order to convert this case to one under Chapter 7 or Chapter 11. If the Debtor fails to comply with the foregoing, this case will be dismissed without further notice or a hearing.

**END OF DOCUMENT**

```
1                        COURT SERVICE LIST
2  Velma Levingston
   1726 Benedict Drive
3  San Leandro, CA 94577

4  Saman Taherian
   The Fuller Law Firm, PC
5  60 N. Keeble Ave.
   San Jose, CA 95126
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
                                 10
```